ALBANY,<br>Oct. 1825.<br><br>Depau<br>v.<br>Ocean Ins. Co.

---

## DEPAU *against* THE OCEAN INSURANCE COMPANY.

ASSUMPSIT on a policy of insurance, tried at the New York circuit, November, 1823, before EDWARDS, C. Judge.

The action was brought to recover as for a total loss on a policy dated July 28th, 1820, underwritten by the defendants, in favor of the plaintiff, upon one-half of the ship Manchester Packet, on a voyage at and from Havana to Rotterdam, at a premium of 2½ per cent. the sum subscribed to the policy being $2000; and one-half the vessel valued by the policy at the sum insured.

The ship proceeded on the voyage insured, in good condition, according to several of the plaintiff's witnesses; and after encountering a variety of severe weather, a number of the crew having died, and the ship being in a leaky condition, she was compelled to put into Halifax, where she arrived on the 6th September, 1820; underwent several surveys, and was finally repaired and ready for sea, on the 17th November, at the expense of more than half her value. On the 18th November, she sailed for Rotterdam, where she arrived in the latter part of February, 1821.

*After a vessel is repaired, and successfully pursuing her voyage, the assured cannot abandon as for a technical total loss.*

*Where part of a cargo is sold at a port of necessity, to defray the expense of repairs upon a ship, this creates no lien upon the ship for such expenses.*

*When a general average is fairly settled in a foreign port, tho' not the port of necessity, but the port of destination, which the assured is obliged to pay, this is conclusive as between him and the underwriters.*

*If the defects in a vessel, existing previous to effecting a policy of insurance, be not such as to render her unseaworthy, they cannot be taken into consideration, in determining whether the expense of her repairs exceed half her value.*

Certain sugars, a part of her cargo, were sold at Halifax, for the purpose of raising funds, to pay the expenses of the repairs ; and at Rotterdam, the averages, both general and particular, of these expenses were stated and certified.

Here, a bottomry bond to secure the balance of these expenses, and the port charges at Rotterdam, was executed ; upon which the ship was afterwards, on her arrival at New York, arrested, libelled and sold ; the net proceeds proving insufficient to discharge the amount due on the bond, by about $100.

On the 8th December, 1820, the plaintiff abandoned as for a total loss.

The plaintiff having rested, the defendants' counsel offered to prove that the greater part of the repairs at Halifax, were on account of injuries existing before the policy attached ; and to designate in proof what injuries happened before, and what after that time ; what injuries were old, and what accrued during the voyage ; and that the expenses of repairs incurred for injuries during the period covered by the policy did not amount to a moiety, so as to constitute a technical total loss.

This testimony was objected to, and overruled by the judge ; but he said he would allow proof, that any items of the repairs, or expenses at Halifax, were not necessary to render the vessel seaworthy.

To this opinion, the defendants' counsel excepted.

The defendant's counsel then, (among other things,) objected that certain cables procured at Halifax, were not chargeable ;

And that the assured had no right to abandon, after the vessel had been repaired, and was in the due prosecution of her voyage ; and that the abandonment could not be aided by the subsequent events of the voyage.

A verdict was taken, by consent, for the plaintiff, for $3000 damages, subject to the opinion of the Court, upon a case, and subject to adjustment upon the basis to be fixed by the Court, with liberty to either party to turn it into a bill of exceptions.

*W. Slosson,* for the plaintiff, admitted that, to test the right of abandonment, we must look to the actual state of the ship at the time of the abandonment; not to the information of the assured ; acccording to the case of *Dickey* v. *The New York Ins. Co.* (4 Cowen's Rep. 222.) But here, no abandonment was necessary ; for there was an actual total loss. The cases of *Gordon* v. *Bowne,* (2 John. Rep. 150,) and *Mullett* v. *Shedden,* (13 East, 304,) show that this may be, though the property physically remain ; and the last case shows that a loss by adjudication, as in the principal case, is total in fact. *Da Costa* v. *Newnham,* (2 T. R. 407,) is an illustration of this proposition.

The evidence as to antecedent injuries, which did not produce unseaworthiness, was inadmissible.. (*Depeyster* v. *The Col. Ins. Co.* 2 Caines' Rep. 85.)

*G. Griffin & J. O. Hoffman,* contra, relied on *Dickey* v. *The New York Ins. Co.* as conclusive, that after the ship .was repaired, and on her voyage, the assured could not abandon.

As to the average, the foreign adjustment is not conclusive though it might be otherwise, had it been made at the port of necessity. It should not conclude, when made at the port of destination, unless compulsory.

*T. A. Emmet,* in reply, said the rules of adjustment were different in different countries, and the only way to do justice, is to adopt the foreign adjustment, when fairly made. If this adjustment could have been enforced at Rotterdam, it is valid here. The destinction between a port of necessity and of destination, is in favor of the latter. He cited Phil. on Ins. 375, 379 ; and *Strong* v. *The New York Firemen Ins. Co.* (11 John. Rep. 323.)

*Curia,* per SAVAGE, Ch. Justice. There can be no controversy as to the fact, that the expense of the repairs exceeded one-half the value of the vessel ; and the cables must be considered and paid for as a part of her repairs.

That the insurer is not at liberty to show that the vessel had received part of the injury anterior to the voyage, has

not been disputed since the decision of *Depeyster* v. *The Columbian Insurance Company*, (2 Caines' Rep. 85 ;) unless she was, in fact, unseaworthy.

Assuming these points in favor of the plaintiff, had he, under the circumstances of the case, a right to abandon for a technical total loss ?

In *Dickey* v. *The New York Insurance Company*, (4 Cowen's Rep. 244,) it was decided that the assured could not abandon, after the vessel was repaired, and successfully pursuing her voyage. In that case, however, the vessel was considered as restored, the respondentia being no lien on the ship. In this case, the bottomry was executed at Rotterdam after the voyage had terminated, on account of the sugars sold at Halifax, and port charges at Rotterdam. In the case cited, the master sold part of the cargo at the Isle of France, and was obliged to borrow money upon respondentia on the cargo; and the Court say, " The vessel was not pledged for the payment; she must therefore be considered as beneficially restored; no impediment was placed in the way of prosecuting the voyage to a successful termination. The plaintiff, then, is entitled to recover for a partial loss only." This case is not to be distinguished in principle. Here, the master paid for the repairs at Halifax. To enable him to do this, he sold part of the cargo. No bottomry or respondentia was executed; no money was borrowed; and, according to the case cited, there was no lien on the ship. She was then beneficially restored. She did, in fact, prosecute her voyage; and was in the prosecution of her voyage, on the 8th December, 1820, when the offer to abandon was made. In *Da Costa* v. *Newnham*, (2 T. R. 407,) the vessel was never beneficially restored. A bottomry bond was executed to raise money, with which to make the repairs; under process upon which, she was subsequently sold. In that particular, the case differs from the principal one.

According to the principles settled by this Court, the plaintiff can recover for a partial loss only.

He is entitled to the amount expended for repairs, deducting one-third new for old; and also the difference between

the price for which the sugars sold at Halifax and what they would have sold for at Rotterdam ; the residue of the expenses at Halifax to be borne upon the principles of general average ; the defendants to pay the ship's proportion of that average.

*Strong* v. *The Firemen Insurance Company*, (11 John. Rep. 323,) decides, that when a general average is fairly settled in a foreign port, and the insured is obliged to pay his proportion of it, he may recover the amount from the insurer, though the average may have been settled differently abroad, from what it would have been at the home port. The averages settled at Rotterdam, upon which money was paid, or the bottomry bond given, must accordingly govern.

Rule accordingly.